UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIDAL MAURICE WHITLEY,

                                    Plaintiff,

        v.

C.O. VINCENT ORT; DOCTOR ROBERT
V. BENTIVEGNA; C.O. JAMES V.
SUTTER; DOCTOR VANDER STEEG;
NURSE DEBORAH MCDONALD,

                                    Defendants.[1]

No. 17-CV-3652 (KMK)

OPINION AND ORDER

Appearances:

Vidal Maurice Whitley
Pine City, NY
*Pro Se Plaintiff*

Janice Powers, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants Ort, Bentivegna, Sutter, and McDonald*

Edward Griffin Warren, Esq.
Voute, Lohrfink, Magro & Collins, LLP
White Plains, NY
*Counsel for Defendant Van der Steeg*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Vidal M. Whitley ("Plaintiff") filed the instant Complaint ("Complaint"),

pursuant to 42 U.S.C. § 1983, against Correction Officer Vincent Ort ("Ort"), Doctor Robert V.

Bentivegna ("Bentivegna"), C.O. James V. Sutter ("Sutter"), Nurse Deborah McDonald

---

[1] Plaintiff sued "Doctor Vander Steeg."  (*See* Compl. 1 (Dkt. No. 1).)  Based on the Parties submissions, the full name and correct spelling is John Van der Steeg, M.D.  The Clerk of the Court is instructed to update the caption accordingly.

("McDonald," and together with Ort, Bentivegna, and Sutter, "County Defendants"), and Doctor

Van der Steeg ("Van der Steeg," and together with County Defendants, "Defendants"). (Compl.

(Dkt. No. 1).)[2] Plaintiff alleges that Defendants violated his rights under the Eighth Amendment

when he was assaulted, raped, and then denied proper medical care while incarcerated at Green

Haven Correctional Facility ("Green Haven"). (*Id.* at 3–4.)[3]

Before the Court is Dr. Van der Steeg's Motion To Dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(c), (*see* Van der Steeg Notice of Mot. To Dismiss (Dkt. No.

24); Van der Steeg Mem. of Law in Supp. of Mot. To Dismiss ("Van der Steeg Mem.") (Dkt.

No. 26)), and Dr. Bentivegna and Nurse McDonald's Motion to Dismiss the Complaint and Dr.

Van der Steeg's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), (*see* County

Notice of Mot. To Dismiss (Dkt. No. 27); County Defs.' Mem. of Law in Supp. of Mot. To

Dismiss ("County Defs.' Mem.") (Dkt. No. 28)). For the following reasons, moving Defendants'

Motions To Dismiss are granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), and Plaintiff's four

submissions in opposition to the Motions To Dismiss, which include attached exhibits, (Pl.'s

First Opp'n to Mot. To Dismiss ("Pl.'s First Mem.") (Dkt. No. 31)); Pl.'s Second Opp'n to Mot.

To Dismiss ("Pl.'s Second Mem.") (Dkt. No. 32)); Pl.'s Third Opp'n to Mot. To Dismiss ("Pl.'s

---

[2] Plaintiff also sued the New York Department of Correction and Community Supervision ("DOCCS") and Green Haven, (*see* Compl.), but the Court dismissed those defendants in an order dated July 5, 2017, (*see* Dkt. No. 7).

[3] The Complaint is on a standard prisoner complaint form without any pagination. For ease of reference, the Court will cite to the ECF-generated page numbers.

Third Mem.") (Dkt. No. 43)); Pl.'s Fourth Opp'n to Mot. To Dismiss ("Pl.'s Fourth Mem.") (Dkt. No. 45)), and are taken as true for the purpose of resolving the instant Motion.[4] During the time of the alleged events, Plaintiff was a convicted prisoner at Green Haven. (Compl. 3.)

Plaintiff alleges that on July 22, 2016, Ort and three other Correction Officers attacked and beat him up while he was in the "mental health block." (Compl. 3.) Plaintiff observed Ort "fumble with his zipper and belt" and then Plaintiff felt him insert something round and hard in Plaintiff's rectum for about five minutes. (*Id.*) As he left, Ort stated "Whitley you a b[****] you my b[****]." (*Id.*) Plaintiff was removed by unnamed officers and a sergeant so that the area he was beat and raped in could be cleaned. (*Id.*) Plaintiff was relocated to the Mental Health Observation Tanks, and Plaintiff alleges his relocation violated "policy [and] procedure" because Plaintiff had not been cleared to be back in the inmate population by medical, as he had not yet seen a doctor. (*Id.*)

Plaintiff told several staff about the attack and rape, and unnamed staff would tease him, ignore him, or run by his cell instead of alerting "PREA."[5] (*Id.* at 4.) "Several medical staff allowed security to tell them to stand down even though they knew the sexual assault had taken place." (*Id.*) More specifically, Plaintiff alleges he was "ignored by" and "denied medical assistance by" Nurse McDonald, who he alleges "very well knew what was going on and chose to do nothing but keep silent and allow the[] officers to get away with raping and beating

---

[4] The claims discussed in Plaintiff's second opposition to the Motion appear to be related to the claims raised in a different pending matter Plaintiff has before the Court, *Whitley v. Bowden, et al.*, No. 17-CV-3564. The Clerk of the Court is instructed to place a copy of Dkt. No. 32 (17-CV-3552 Dkt.) on the docket in No. 17-CV-6564.

[5] PREA is the acronym for the Prison Rape Elimination Act, 42 U.S.C. § 15601, *et seq.* Plaintiff's references to PREA in the filings appear to refer to the system and procedures put in place by DOCCS in accordance with the statute.

[Plaintiff]." (Pl.'s First Mem. 2–3.) Plaintiff "told [Nurse McDonald] what happened" and she "ran out to go alert PREA and then in an instant she allowed officers to run her down and tell her to be quiet about this situation." (*Id.* at 3; *see also* Pl.'s Third Mem. 1–2 (same).) Accordingly, Nurse McDonald kept quiet, did not report the assault, and did not follow New York State Department of Corrections and Community Supervision ("DOCCS") directives and policies regarding reporting sexual assault. (Pl.'s Third Mem. 1.)

On July 23, 2016, Plaintiff "kept alerting staff member after staff member that [he] had been raped," but he was ignored. (Pl.'s First Mem. 40.) Plaintiff was told he "would be seen by medical in the morning time and that never happened." (*Id.*) Then, he was told he would be seen in the afternoon, and "that also never happened." (*Id.*) Several days went by, and Plaintiff, in disbelief over the "nastiness and filth" that occurred to him, "lost it and tried to hang [him]self" on July 24, 2016. (Compl. 4.) Plaintiff also "put [his] arm out the cell [and] refused to move it until someone [did] their job[] and got [him] some medical assistance as [his] rectum hurt outrageously." (*Id.*) Correction Officer Toal then ordered Sutter to beat Plaintiff's arm with a baton several times, until Plaintiff could no longer take it. (*Id.*) Plaintiff attempted to hang himself and Lieutenant Cora "came [and] rectified the situation." (*Id.*) At this time, Plaintiff was bruised badly on his left arm, had cuts on his neck from the noose he made, and had pain in his rectum from the rape. (*Id.*)

Plaintiff was taken to the medical unit at Green Haven at 9:15 p.m. on July 24, 2015. (Pl.'s First Mem. Ex. B ("DOCCS Medical Records") 9 (Dkt No. 31).)[6] At 10:30 p.m., Plaintiff

---

[6] Plaintiff also alleges that unnamed individuals at Green Haven Medical "blatantly falsified the medical documentation" by "lying [and] saying [he had] no marks" on his arm, despite him complaining about the pain Sutter caused Plaintiff by beating him "savagely" and him having a "huge contusion on [his] forearm." (Pl.'s First Mem. 3; Pl.'s Third Mem. 3.) As evidence of this, Plaintiff notes that three hours later at Putnam Hospital, he was documented as

informed medical staff at Green Haven that he had been raped the evening of July 22, 2016, and

that he had reported the assault to security but nothing had been done.  (*Id.* at 15.)  The physician

on call thus recommended Plaintiff be sent to an outside hospital.  (*Id.*)  Plaintiff was then taken

to Putnam Hospital shortly after midnight on July 25, 2016, where he was treated by Dr. Van der

Steeg.  (Pl.'s First Mem. 2; Pl.'s First Mem. Ex. A ("Physician Notes") 10 (Dkt. No. 31).)

Plaintiff received x-rays on his arm, and was given antibiotic ointment for his neck and Tylenol

and Motrin for his arm.  (Compl. 4; Physician Notes 12.)  Plaintiff's "buttocks [was] opened

[and] looked in by the doctor," (Compl. 4), but Plaintiff alleges that "a visual look at an

unaffected area (outer anus) [and] not the inside anal cavity which was the affected area" was

poor medical care.  (Pl.'s First Mem. 4; *see also id.* at 42 (alleging "the only thing Dr. [Van der

Steeg] did was look into my buttocks and speak to me rather offensively"); Pl.'s Third Mem. 5

(noting the inside of his anal cavity was not inspected); Pl.'s Fourth Mem. 2 (same).)  Hospital

treatment records indicate that Plaintiff was given a rectal exam, which noted "[n]ormal tone, no

external trauma, bleeding or tears."  (Physician Notes 11.)  Plaintiff also alleges that he was

denied proper medical care by Dr. Van der Steeg because the state police were not notified, he

was not given a rape kit or a rape advocate, and also was not provided therapy—all things he had

requested.  (Pl.'s First Mem. 4, 42.)  Dr. Van der Steeg's notes state he "[a]ttempted to obtain a

sexual assault advocate for patient as per patient request but none available."  (Physician Notes

11.)  Additionally, "[g]iven the duration of time since patient alleged sexual assault, lack of

visualized, upon the rectum, the fact the patient has had a bowel movement since the trauma, no

need for sexual assault kit be [sic] performed."  (*Id.*)  Plaintiff disputes that there was no need for

---

having a "contusion of forearm, left."  (Pl.'s First Mem. 3; Pl.'s Third Mem. 3, 5; *see also* Pl.'s
First Mem. Ex. A ("Physician Notes") 10, 12 (Dkt. No. 31).)

a rape kit, (Pl.'s Fourth Mem. 2), and also alleges the treatment provided by Dr. Van der Steeg was in violation of Putnam Hospital's policies and procedures, (Pl.'s First Mem. 4; Pl.'s Fourth Mem. 2). Plaintiff asserts that "Dr. Van der Steeg acted maliciously and negligently and deliberately indifferen[t] to [Plaintiff]." (Pl.'s Fourth Mem. 3.)

After Plaintiff returned to Green Haven, he was placed on observation, and then allegedly returned to the Special Housing Unit ("SHU"), rather than being placed in Involuntary Protective Custody ("IPC"), which is what Dr. Bentivegna had ordered. (Pl.'s First Mem. 5.)[7] However, Dr. Bentivegna did not "enforce his orders," (*id.*), "call and check and see and make sure his IPC placement . . . . was indeed carried out," (Pl.'s Third Mem. 4), and Dr. Bentivegna's staff did "not respect him and his position of authority" and "over[ode] all of his orders," (*id.* at 4–5.) Plaintiff was never provided a rape advocate or therapy after his return to Green Haven, despite allegedly being promised one. (Pl.'s First Mem. 3; Pl.'s Third Mem. 3; Pl.'s Fourth Mem. 1.)

Plaintiff seeks $275 billion in monetary damages for the mental, physical, and emotional pain he suffered from the alleged excessive use of force, rape, and medical indifference. (Compl. 6.)

B. Procedural Background

Plaintiff filed the Complaint on May 15, 2017. (Compl.) He was granted in forma pauperis status on June 22, 2017. (Dkt. No. 6.) Dr. Van der Steeg answered the Complaint on September 15, 2017. (Van der Steeg Answer (Dkt. No. 9).) In the Answer, he also asserted a cross-claim against County Defendants for indemnification, attorney's fees, costs, and disbursements as well as a set-off to reduce recovery. (Van der Steeg Answer 3.) On September

---

[7] Records from the medical unit at Green Haven indicate that at 4 a.m. on July 25, 2015 Plaintiff was placed in IPC. (Green Haven Medical Records 15.) Plaintiff avers that "it wasn't true." (Pl.'s Third Mem. 7.)

27, 2018, Dr. Van der Steeg filed a pre-motion letter indicating the grounds on which he would move to dismiss the Complaint. (Letter from Edward Warren, Esq. to Court (Sept. 27. 2017) ("Sept. 27, 2017 Warren Letter") (Dkt. No. 17).) After receiving an extension, (Dkt. No. 16), on October 10, 2017, the County Defendants also filed a pre-motion letter indicating the grounds on which they would move to dismiss the Complaint as to Dr. Bentivegna and Nurse McDonald and would move to dismiss Dr. Van der Steeg's cross-claims, (Letter from Janice Powers, Esq. to Court (Oct. 10, 2017) (Dkt. No. 21)), and filed an Answer on behalf of Ort and Sutter, (Dkt. No. 22). The Court then set a briefing schedule. (Dkt. No. 23.)

Dr. Van der Steeg filed his Motion and accompanying papers on November 3, 2017. (Van der Steeg Notice of Mot.; Van der Steeg Mem.; Decl. of Edward Warren, Esq. in Supp. of Mot. To Dismiss (Dkt. No. 25).) County Defendants filed their Motion and accompanying memorandum on November 9, 2018. (County Defs.' Notice of Mot.; County Defs.' Mem.) On December 5, 2017, Dr. Van der Steeg filed an opposition to County Defendants' Motion To Dismiss the cross-claims. (Van der Steeg Mem. Opp'n to Mot. To Dismiss Cross-Claims ("Van der Steeg Cross-Claim Mem.") (Dkt. No. 29).) On December 26, 2017, Plaintiff filed his first opposition to the Motions. (Pl.'s First Mem.)[8] On December 28, 2017, Plaintiff filed a second opposition to the Motions, (Pl.'s Second Mem.), although the arguments contained in the second opposition were about a different pending matter Plaintiff has before the Court. (*See generally*

---

[8] On January 3 and January 17, 2018, Plaintiff filed letters requesting the appointment of pro bono counsel, (Letter from Pl. to Court (Jan. 3, 2018) (Dkt. No. 33); Letter from Pl. to Court (Jan. 17, 2018) (Dkt. No. 36)), which the Court denied without prejudice, (Order (Dkt. No. 41)). The Court also ordered Defendants to respond to allegations in Plaintiff's January 17, 2018 letter that he was not receiving his legal mail while in keeplock, (Dkt. No. 37), which Defendants did on February 1, 2018, (Letter from Janice Powers, Esq. to Court (Feb. 1, 2018) (Dkt. No. 39)).

Dkt. (16-CV- 3564 Dkt.).)[9]  On January 8, 2018, County Defendants filed their reply.  (County Defs.' Reply Mem. of Law in Supp. of Mot. To Dismiss ("County Defs.' Reply Mem.") (Dkt. No. 34).)  On January 8, 2018, Dr. Van der Steeg filed his reply.  (Van der Steeg Reply Mem. of Law in Supp. of Mot. To Dismiss ("Van der Steeg Reply Mem.") (Dkt. No. 35).)

On February 20, 2018, Plaintiff filed his third opposition to the Motions, (Pl.'s Third Mem.), and on February 23, 2018, Plaintiff filed his fourth (and final) opposition to the Motions, (Pl.'s Fourth Mem.).  County Defendants moved to strike the third and fourth filings, (Letter from Janice Powers, Esq. to Court (Feb. 23, 2018) (Dkt. No. 46)), but the Court denied the request in light of Plaintiff's pro se status, (Dkt. No. 47).

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).  The standards of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim and Rule 12(c) for judgment on the pleadings are the same. *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

[9] On February 28, 2018, the Court issued an Order instructing the Parties to file documents only on the docket for the Action those documents are relevant to, in order to keep the Actions separate, and to avoid confusion with duplicate filings.  (Dkt. No. 41.)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must

"construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

### B.  Plaintiff's Claims against Dr. Bentivegna, Nurse McDonald, and Dr. Van der Steeg

Plaintiff alleges that Dr. Van der Steeg, Dr. Bentivegna, and Nurse McDonald were deliberately indifferent to his medical needs by failing to provide him with adequate medical treatment following his alleged assault. (Compl. 3–4.) Dr. Bentivegna, and Nurse McDonald

argue that Plaintiff has failed to allege their personal involvement, (County Defs.' Mem. 6–7; County Reply Mem. 1), and Dr. Van der Steeg, Dr. Bentivegna, and Nurse McDonald argue that Plaintiff fails to plausibly allege an Eighth Amendment violation, (County Reply Mem. 3–5; Van der Steeg Mem. 2–3; Van der Steeg Reply Mem. 1–3).[10] The Court addresses each in turn.

### 1. Personal Involvement

Dr. Bentivegna and Nurse McDonald argue that the Complaint should be dismissed against them because they were not personally involved in the alleged constitutional violations. (County Defs.' Mem. 6–7; County Defs.' Reply 1.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Dr. Bentivegna's and Nurse

---

[10] As a convicted prisoner, Plaintiff's deliberate indifference claim is analyzed under the Eighth Amendment, because it is an allegation that his "conditions of confinement were a form of punishment." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

McDonald's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Dr. Bentivegna and Nurse McDonald are not mentioned in the Complaint. (*See* Compl.) However, Plaintiff makes allegations about Dr. Bentivegna and Nurse McDonald's involvement in his other submissions, (*see generally* Pl.'s First Mem.; Pl.'s Second Mem.; Pl.'s Third Mem.; Pl.'s Fourth Mem.), which the Court will consider, *see Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases and holding that a court may rely on factual allegations raised for the first time in a pro se plaintiff's opposition papers if consistent with the allegations in the complaint). The Court addresses each Defendant's personal involvement in turn.

### a. Dr. Bentivegna

Plaintiff has failed to plausibly allege Dr. Bentivegna's personal involvement in any alleged constitutional deprivation regarding his medical treatment. Construing his submissions liberally, Plaintiff alleges that Dr. Bentivegna ordered Plaintiff to be placed in ICP, but his orders were not followed. (Pl.'s First Mem. 5; Pl.'s Third Mem. 4–5.) Plaintiff suggests this was because Dr. Bentivegna's staff does not respect him and overrides his orders. (Pl.'s Third Mem. 4–5.) Plaintiff does not allege Dr. Bentivegna was present for, let alone participated directly or somehow permitted, the violation of Plaintiff's constitutional rights by denying him medical attention. *Grullon*, 720 F.3d at 139 (listing as a category of personal involvement when a defendant participates directly in the alleged constitutional violation). Indeed, Plaintiff alleges that Dr. Bentivegna did in fact provide Plaintiff the medical assistance he was seeking—

placement in ICP away from the general population—but other people thwarted his orders. (Pl.'s Third Mem. 4.) Plaintiff does suggest that Dr. Bentivegna was responsible for supervising some of the individuals who failed to implement his order, however, his allegations regarding the lack of "professionalism" among Dr. Bentivegna's staff does not allege he was "grossly negligent in supervising" other staff members. (*Id.*) *See Grullon*, 720 at 139 (listing as a category of personal involvement when a defendant "was grossly negligent in supervising subordinates who committed the wrongful acts").

Moreover, Plaintiff does not allege that Dr. Bentivegna even knew the ICP order was not being implemented, and thus cannot be responsible for "fail[ing] to remedy the wrong" or "failing to act on information indicating that unconstitutional acts were occurring." *Id.* (italics omitted). Nor does Plaintiff allege Dr. Bentivegna was aware that other medical staff had a history of displaying deliberate indifference to prisoners' medical needs, such that the Court could reasonably infer that he knew Plaintiff would be provided constitutionally deficient medical care. *See id.* (listing as a category of personal involvement when a defendant allows "a policy or custom" of unconstitutional practices to continue). Plaintiff's conclusory allegations suggesting that Dr. Bentivegna's orders were frequently ignored is insufficient to allege a policy or custom implicating Dr. Bentivegna, as it is not even clear from the filings that he was aware of this occurring. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 636–37 (S.D.N.Y. 2016) (holding that conclusory allegations that a defendant had knowledge of an allegedly unconstitutional act are insufficient to show personal involvement and collecting cases); *see also Lara-Grimaldi v. Cty. of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (dismissing a defendant for lack of personal involvement because, among other reasons, the complaint did not allege that the defendant "interacted with . . . any of the [prison] employees

responsible for" the allegedly unconstitutional act).

Moreover, Dr. Bentivegna cannot be held personally liable for constitutional violations by other medical staff or Corrections Officers at Green Haven merely "because he was in a high position of authority." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (affirming summary judgment in favor of the Commissioner of [DOCCS]); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (explaining that "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority" (internal quotation marks omitted)). Even if Dr. Bentivegna was responsible for supervising medical care at Green Haven, "[s]upervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted). Personal involvement requires "a showing of more than the linkage in the [Green Haven] chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985) (per curiam); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam) (same). The Court therefore dismisses the claims against Dr. Bentivegna for lack of personal involvement.

### b. Nurse McDonald

Plaintiff alleges that he told Nurse McDonald about the sexual assault, (Pl.'s First Mem. 3; Pl.'s Third Mem. 1); however, Nurse McDonald allegedly never provided him any medical treatment or alerted PREA, because unnamed Correction Officers pressured her to keep quiet. (Pl.'s Third Mem. 1–2.) The Court finds that Plaintiff has plausibly alleged Nurse McDonald's personal involvement in the alleged deliberate indifference to Plaintiff's medical needs. *See Grullon*, 720 F.3d at 139 (listing as categories of personal involvement when a defendant "participated directly in the alleged constitutional violation" or "exhibited deliberate indifference

. . . by failing to act on information indicating" a health risk to the plaintiff); *cf. Lara-Grimaldi*, 2018 WL 1626348, at *11 (dismissing claim for lack of personal involvement because "[t]he [c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted [the plaintiff] to be placed on 'routine' supervision" rather than suicide watch, nor did it allege that the defendant "interacted with [the plaintiff]"); *Casiano v. Cty. of Nassau*, No. 16-CV-1194, 2017 WL 4484338, at *4 (E.D.N.Y. Sept. 30, 2017) (dismissing for lack of personal involvement because the "[p]laintiff d[id] not allege facts that support an inference that [the defendant] had actual knowledge of the [d]ecedent's specific medical condition, such as allegations that the [d]ecedent directly spoke to [the defendant]").

### 2. Eighth Amendment Claim

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). In other words, "the inmate must show that the conditions, either alone or in combination, pose an

unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This means that the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (internal quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate

health." *Id.* (internal quotation marks omitted). A defendant's awareness of the risk of serious

harm can be established through "inference from circumstantial evidence," including "from the

very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However,

"mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at

125 (internal quotation marks omitted). Neither does "mere disagreement over the proper

treatment . . . create a constitutional claim," and accordingly, "[s]o long as the treatment given is

adequate, the fact that a prisoner might prefer a different treatment does not give rise to an

Eighth Amendment violation." *Chance*, 143 F.3d at 703.

Defendants do not argue that Plaintiff has not plausibly alleged facts satisfying the first

prong. Thus, the Court proceeds to the subjective prong.

### a. Dr. Van Der Steeg

Dr. Van der Steeg argues that Plaintiff's Eighth Amendment claim based on inadequate

medical care, in essence, constitutes nothing more than a non-actionable disagreement with the

treatment provided him at Putnam Hospital. (Van der Steeg Reply Mem. 2.) Indeed, Plaintiff's

own pleadings show that Plaintiff's medical needs were not ignored by Dr. Van der Steeg. (*See*

Physician Notes 10–14.) He examined Plaintiff's rectum and concluded there was "normal tone,

no external trauma, bleeding or tears." (Physician Notes 11.) Plaintiff argues that a more

thorough exam of his rectum should have been conducted. (Compl. 4; Pl.'s First Mem. 4, 42;

Pl.'s Third Mem. 5; Pl.'s Fourth Mem. 2.) Additionally, Plaintiff questions Dr. Van der Steeg's

medical conclusion that a rape kit was not necessary, (Pl.'s First Mem. 4, 42; Pl.'s Fourth Mem.

2), which was made because Plaintiff had a bowel movement after the alleged assault, (Physician

Notes 11). Further, Plaintiff questions Dr. Van der Steeg's decision not to provide him a rape

advocate. (Pl.'s First Mem. 4, 42.) The medical records Plaintiff provides indicate that in

response to Plaintiff's request for an advocate, Van der Steeg attempted to locate one, but was unable to. (Physician Notes 11.)

Plaintiff's allegations all boil down to disagreements with the treatment Dr. Van der Steeg provided Plaintiff at Putnam Hospital. However, "[a]n inmate's disagreement with his treatment or a difference of opinion over the type or course of treatment [does] not support a claim of cruel and unusual punishment." *Alston v. Bendheim*, 672 F. Supp. 2d 378, 385 (S.D.N.Y. 2009); *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Accordingly, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."). These are precisely the sorts of "issues [that] implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Whitfield v. O'Connell*, No. 09-CV-1925, 2010 WL 1010060, at *7 (S.D.N.Y. Mar. 18, 2010) (internal quotation marks omitted), *aff'd*, 402 F. App'x 563 (2d Cir. 2010); *see also Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *10 n.15 (S.D.N.Y. May 10, 2018) ("[T]o the extent that Plaintiff would have prefer[red] a different treatment such as referring him to an outside hospital or calling poison control, these claims do[ ] not give rise to an Eighth Amendment violation." (internal quotation marks omitted)); *Morgan v. Shivers*, No. 14-CV-7921, 2018 WL 618451, at *9 (S.D.N.Y. Jan. 29, 2018) (dismissing medical indifference

claim over disagreement regarding extent of examination post rape); *O'Diah v. Mawhir*, No. 08-CV-322, 2012 WL 4482579, at *9 (N.D.N.Y. Sept. 5, 2012) (finding no Eighth Amendment violation where the plaintiff alleged that "different or additional tests should have been run or medication prescribed"), *adopted by* 2012 WL 4471183 (N.D.N.Y. Sept. 26, 2012). Indeed, "treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference." *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) (internal quotation marks omitted); *see also Johnson v. Wright*, 234 F. Supp. 2d 352, 361 (S.D.N.Y. 2002) ("Generally, where the dispute concerns not the absence of help, but the choice of a certain course of treatment, a court will not second guess the medical personnel." (alterations and internal quotation marks omitted)). As noted, the medical records provided by Plaintiff show that Dr. Van der Steeg examined Plaintiff at Putnam Hospital, and specifically took steps to evaluate the injuries alleged from the rape by conducting a rectal exam. (Physician Notes 10–14.) There is thus no outright denial of care alleged here, and nor are there accompanying facts from which it can be inferred that Dr. Van der Steeg knew of and disregarded a substantial risk of serious harm to Plaintiff. The same can be said for Dr. Van der Steeg's diagnosis of Plaintiff's injuries, as this diagnosis followed an examination of Plaintiff by Dr. Van der Steeg and did not disregarded a substantial risk of serious harm to Plaintiff. (Physician Notes 10–11.) Thus, Plaintiff's allegations regarding the disagreement with the chosen method of treatment are insufficient to support his Eighth Amendment deliberate indifference claim as to Dr. Van der Steeg. Therefore, this claim is dismissed.

### b. Nurse McDonald

Defendants argue that Plaintiff has failed to allege Nurse McDonald was deliberately indifferent to his medical needs, because he merely asserts that he was "ignored by Nurse

McDonald" and that Nurse McDonald did, in fact, alert PREA. (County Reply Mem. 3–4.) However, the first allegation that Nurse McDonald was aware of his rape and took no steps in response is indeed a factual allegation that the Court must take as true at this stage of the proceedings. The second assertion that Nurse McDonald alerted PREA is not what Plaintiff alleged in his filings. Rather, Plaintiff alleges that Nurse McDonald left to alert PREA, but her efforts were thwarted by Corrections Officers who told her to keep the situation quiet. (Pl.'s First Mem. 2–3; Pl.'s Third Mem. 1.) Thus, construing his submissions liberally, Plaintiff alleges that Nurse McDonald never contacted PREA or anyone else at Green Haven to provide Plaintiff with medical care, and as a result he did not receive medical care for the alleged rape until after his attempted suicide two days later.

Drawing all reasonable inferences in favor of Plaintiff, these allegations are sufficient to plausibly state a claim for deliberate indifference, because Nurse McDonald knew that Plaintiff had been raped, but failed to provide him medical assistance. *See Melvin*, 2016 WL 1254394, at *9 (denying motion to dismiss where the defendants "did not provide [the plaintiff] with *any* care" and instead "sent [the plaintiff] back to his cell, leaving him moaning and agonizing in pain" (internal quotation marks omitted)); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 132 (E.D.N.Y. 2010) (denying summary judgment because the defendants were aware of the plaintiff's medical condition "but declined to provide him any medical care despite [the plaintiff]'s pleas that he be" treated, instead "simply explain[ing] . . . that they planned to do nothing because [the prison] was a transit facility"); *Baptiste v. Warden at Ottisville, FCI N.Y.*, No. 09-CV-5523, 2010 WL 3185748, at *8 (S.D.N.Y. Aug. 11, 2010) (finding the plaintiff's claims "sufficiently plausible to survive a motion to dismiss" where he alleged that the defendant doctor "watched [him] endure 'pain and suffering and loss of eyesight,' instead of discontinuing

the [prescribed treatment] and performing additional tests to arrive at a more conclusive diagnosis" (alteration omitted)); *cf. Jean v. Barber*, No. 09-CV-430, 2011 WL 2973957, at *1, 3–4 (N.D.N.Y. June 28, 2011) (granting summary judgment to non-medical personnel defendant where, after the plaintiff said "he wanted to commit suicide," the defendant "immediately informed [another] officer on the shift, who then informed [a medical personnel defendant]" who saw the plaintiff and continued to observe him), *adopted by* 2011 WL 2975218 (N.D.N.Y. July 21, 2011); *Lee v. Frederick*, 519 F. Supp. 2d 320, 327–28 (W.D.N.Y. 2007) (granting summary judgment to defendant because, although the defendant "walked away from [the plaintiff's] cell" and left him there "for six or seven hours without medical attention" after the plaintiff said "he had no vision in his left eye," the defendant "forwarded [the] plaintiff's complaints . . . to [another defendant], who came to [the] plaintiff's cell and had the plaintiff taken to an outside hospital, where he received appropriate treatment," and there was "no indication that [either defendant] deliberately delayed taking action for the purpose of causing [the] plaintiff pain or prolonging his suffering"). Thus, the Motion is denied as to the claims against Nurse McDonald.[11]

---

[11] Plaintiff also alleges that Nurse McDonald violated DOCCS Directive 4028 by failing to alert PREA after he told her about this rape. (Pl.'s Third Mem. 1.) Even accepting Plaintiff's allegation as true, "the law is settled that the failure to follow a DOC[C]S Directive or prison regulation does not give rise to a federal constitutional claim." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002); *see also McFadden v. Fischer*, No. 13-CV-559, 2016 WL 5661824, at *7 (W.D.N.Y. Sept. 30, 2016) (holding that violating a DOCCS regulation does not establish deliberate indifference and collecting cases).

Further, "[t]o the extent that Plaintiff's claim is based on a failure to investigate his allegations of sexual assault under [PERA], it must be dismissed because nothing in the statute suggests that PREA intended to establish a private claim for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a claim by an inmate." *Abreu v. Brown*, No. 14-CV-6599, 2018 WL 565280, at *9 (W.D.N.Y. Jan. 22, 2018) (alterations and internal quotation marks omitted); *see also Morgan v. Shivers*, No. 14-CV-7921, 2018 WL 618451, at *7 (S.D.N.Y. Jan. 29, 2018) (same).

### 3. Qualified Immunity

Dr. Bentivegna and Nurse McDonald argue that even if Plaintiff has stated an Eighth Amendment claim, they are nonetheless shielded by qualified immunity. (County Defs.' Mem. 10–11.) "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004) (emphasis, alterations, and internal quotation marks omitted).

As the Court has previously held dismissing qualified immunity claims raised by Defendants' counsel here, "Defendants make no actual arguments about why they are entitled to qualified immunity. Rather, they cite generic caselaw establishing the qualified immunity standard and apply it to this case in a single sentence." *Whitley*, 2018 WL 2170313, at *12. Here, Defendants merely state:

> In this matter, the dearth of factual allegations against moving defendants do not show a violation of a constitutional right nor do they establish that any of the defendants had reason to believe an established law [w]as being violated.

(County Defs.' Mem. 11.) Again, "[t]he Court therefore declines to consider this argument, because it is 'not sufficiently argued' by Defendants, who are represented by counsel and attempting to dismiss a pro se Complaint." *Whitley*, 2018 WL 2170313, at *12 (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998); *Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (per curiam) ("Perhaps counsel for [the] [a]ppellant intends that we form an

argument for him, by looking into the record to document the 'facts' posited in his 'statement of the case,' and then examining various combinations of these facts in the light of the legal doctrines he later mentions. But that is simply not our job, at least in a counseled case."); *Tutor Time Learning Ctrs., LLC v. GKO Grp., Inc.*, No. 13-CV-2980, 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013) (noting that the "[d]efendants['] conclusory . . . statement that the authorities they cite are 'equally applicable' to [the statute] does not suffice to raise the argument"); *Am. Tissue, Inc. v DLJ Merch. Banking Partners, II, L.P.*, No. 03-CV-6913, 2006 WL 1084392, at *6 (S.D.N.Y. Apr. 20, 2006) (dismissing claims with prejudice because the party's brief "fail[ed] to address with any seriousness the legal sufficiency of those claims")). However, Defendants are free to renew—and sufficiently argue—their qualified immunity defense at a later date.

### C. Dr. Van der Steeg's Cross-Claims

County Defendants also move to dismiss Dr. Van der Steeg's cross-claims for indemnification, attorney's fees, costs, and disbursements as well as set-offs to reduce recovery against Dr. Van der Steeg. (County Defs.' Mem. 8–10.) The claims against Dr. Van der Steeg are dismissed, thus, the Court need not issue an advisory opinion on whether claims for contribution or indemnification of joint tortfeasors is available under § 1983. (*See* Van der Steeg Cross-Claim Mem. 1 (arguing that "Dr. Van der Steeg submits that these arguments are academic because he should be dismissed from this action").)

### III. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss is granted in part and denied in part. The Court dismisses the claims against Dr. Bentivegna and Dr. Van der Steeg, but denies the Motion to Dismiss the Eighth Amendment claims against Nurse McDonald. However, because

this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the Complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, the dismissed claims could be dismissed with prejudice, and the case will go forward without Dr. Bentivegna or Dr. Van der Steeg.

The Clerk of the Court is respectfully requested to terminate the pending motions, (Dkt. Nos. 24, 27), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: September 28, 2018
 White Plains, New York

                                                 _____
                                                 KENNETH M. KARAS
                                                 UNITED STATES DISTRICT JUDGE